UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

TIERNEY O'NEAL and JUSTINE WILBER,

                              Plaintiffs,                <u>COMPLAINT</u>
                -against-                          1:17-cv-06882-JGK

WILDLIFE CONSERVATION SOCIETY, ATU      JURY TRIAL DEMANDED
MARSHALL, DENISE MCCLEAN, ZULMA
RIVERA, and CRAIG PIPER

                        Defendants.
_____

Plaintiffs **TIERNEY O'NEAL** and **JUSTINE WILBER**, by and through their attorneys GLASS KRAKOWER LLP, as and for their Complaint, allege as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs Tierney O'Neal and Justine Wilber (hereinafter "Plaintiffs") bring this action pursuant to Title VII of the Civil Rights Act of 1964, the New York State and New York City Human Rights Law, to remedy sexual harassment and retaliation at Plaintiffs' place of work, the Prospect Park Zoo, part of Defendant Wildlife Conservation Society.

2.    Plaintiffs were the victims of unwanted video recording of their lower bodies while sitting at a picnic table by Defendant Atu Marshall (hereinafter "Marshall"), a male employee.

3.    Upon reporting the sexual harassment to their supervisors and management, management—and specifically Defendants Denise McClean, Zulma Rivera, and Craig Piper (hereinafter, collectively, "management")—failed to adequately address the situation or take any meaningful action against Defendant Marshall, failed to adequately protect Plaintiffs and the

other female employees from future acts of sexual misconduct, and retaliated against Plaintiffs for reporting the sexual harassment.

4.      Plaintiffs therefore bring this action to remedy unlawful employment discrimination and retaliation on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., 20 U.S.C. §1681 et seq., the New York State Human Rights Law, N.Y. Exec Law § 296, and the New York City Human Rights Law, N.Y.C. Administrative Code §§8-101 et seq.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., a federal statute.

6.      As to claims under New York State and City law, this Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because Defendant is subject to personal jurisdiction in this District and maintains a headquarters in Manhattan, New York.

## THE PARTIES

8.      Plaintiff Tierney O'Neal is a resident of the City of New York and State of New York and a current wild animal keeper at the Prospect Park Zoo.

9.      Plaintiff Justine Wilber is a resident of the City of New York and State of New York and a current wild animal keeper at the Prospect Park Zoo.

10.     Defendant Wildlife Conservation Society (hereinafter "WCS") is an organization that manages five New York City wildlife parks: the Bronx Zoo, the Central Park Zoo, the New York Aquarium, the Prospect Park Zoo, and the Queens Zoo.

11.     Defendant Marshall is a current wild animal keeper at the Prospect Park Zoo.

12.     Defendant Denise McClean (hereinafter "McClean") is the current Director of Prospect Park Zoo.

13.     Defendant Zulma Rivera (hereinafter "Rivera") is the Director of Human Resources for Prospect Park Zoo.

14.     Defendant Craig Piper (hereinafter "Piper") is the Director of City Zoos for Defendant WCS.

## FACTUAL ALLEGATIONS

15.     Plaintiffs work as wild animal keepers (hereinafter "keeper") employed at Prospect Park Zoo, part of the Wildlife Conservation Society.

16.     Plaintiff Wilber has worked as a keeper since June 20, 2007.

17.     Plaintiff O'Neal has worked as a keeper since April 25, 2014.

18.     Plaintiff Wilber, during the summer of 2015, had noticed another keeper, Defendant Marshall, attempting to secretly record her when she was alone with him in a workspace.

19.     Plaintiff Wilber did not report this incident to management because she had no direct proof that Mr. Marshall engaged in this conduct other than her own observations, and based on Plaintiff Wilber's prior experiences with management, without direct proof employees' complaints are not taken seriously.

20.     However, Plaintiff Wilber had informed other employees—prior to June 2016—that she had suspicions that Defendant Marshall was engaging in these acts.

3

21.     Furthermore, it was common knowledge by employees that management did not take employees' complaints seriously unless there was clear and convincing evidence that management could not ignore.

22.     On or about June 15, 2016, while sitting at the picnic table where keepers would eat lunch, Plaintiff Wilber noticed Defendant Marshall recording her and several other female keepers underneath the picnic table with his telephone.

23.     Specifically, Defendant Marshall was recording Plaintiffs and another keeper named Gwen Cruz.

24.     Her prior suspicions being confirmed, Plaintiff Wilber used her own phone to record Defendant Marshall engaging in the unwanted video recording of the female keepers below the picnic table.

25.     Plaintiff Wilber took three video-recordings of Defendant Marshall, which clearly and unequivocally depict Defendant Marshall's lewd, despicable and unwanted behavior.

26.     Specifically, the recordings show:

    a.      Defendant Marshall sitting at the end of a picnic bench.

    b.      He is holding his camera so that the lens is facing outwards towards the legs of the female employees, but in particular, towards Plaintiffs and one other female keeper.

    c.      In one video, Defendant Marshall turns his camera so it is possible to actually see his phone is recording.

    d.      He then turns the lens back towards the direction of Plaintiff O'Neal, and several seconds later he uses his thumb in order to press the "stop" button so that the recording is saved.

27.     After reviewing what she had recorded, on or about June 17, 2016, Plaintiff Wilber

showed her recordings to Defendant Denise McClean, Director of Prospect Park Zoo, Lonnie

McCaskill, Assistant Director and Curator of Prospect Park Zoo, and Jennifer Greig, Assistant

Supervisor of Prospect Park Zoo.

28.     These individuals informed Plaintiff Wilber that Defendant Marshall would be asked

about the incident, and if he denied it they would show him the video. These individuals further

stated that if Defendant Marshall, upon being shown the video, continued to deny the allegation,

then he would be given the option of resigning or having the police called. These individuals

further informed Plaintiff Wilber that Defendant Marshall would no longer be working for the

company by the following Wednesday.

29.     At no point during the June 17, 2016 meeting did anybody in management ask Plaintiff

Wilber to write a statement or report.

30.     Furthermore, Defendant McClean informed Plaintiff Wilber that her videos were

sufficient evidence for them to conclude that Defendant Marshall had engaged in the conduct.

31.     Upon information and belief of Plaintiffs, at no point during management's entire

investigation were any keepers asked to provide written statements or reports.

32.     Furthermore, Defendant Marshall was not suspended and continued working alongside

Plaintiffs during the purported investigation.

33.     Upon information and belief of Plaintiff Wilber, Defendant Rivera met with Defendant

Marshall on June 21, 2016. Also present was Wendell Reid, union representative for Mr.

Marshall. Defendant Marshall did not receive any discipline during this meeting.

34.     Despite assurances that Defendant Marshall would receive appropriate discipline—including the possibility of forced resignation—on or about June 22, 2016, Plaintiff Wilber spoke to Mr. Reid and learned that Defendant Marshall had only received a verbal warning.

35.     Upon learning that Defendant Marshall would continue working alongside the female keepers, and that his crude, lascivious and offensive behavior had essentially gone without reprimand or discipline, Plaintiff Wilber felt compelled to inform the other female keepers as to what Defendant Marshall had done so that they could protect themselves from any future unwanted recording or other sexual harassment.

36.     Thus, on or about June 23, 2016, Plaintiff Wilber showed her video-recordings of Defendant Marshall to the other female keepers, including Plaintiff O'Neal.

37.     On or about June 24, 2016, Plaintiff O'Neal and the other female keepers—excluding Plaintiff Wilber, who was not present at work that day—went to management to complain about management's failure to take appropriate action against Defendant Marshall.

38.     Present at this meeting were Defendants McClean and Craig Piper, the Director of City Zoos at Defendant WCS, as well as Mr. McCaskill and Ms. Greig.

39.      During the meeting, Plaintiff O'Neal and the other female keepers demanded to know what management was going to do regarding Defendant Marshall, as they felt unsafe in their work environment.

40.     Initially, management dismissed these complaints, expressed dismay that Plaintiff Wilber had involved the other female keepers, and stated that the matter did not involve Plaintiff O'Neal or the other female keepers.

41.     However, management—upon recognizing the insensitivity of their comments—quickly stated that they were still conducting their investigation into Defendant Marshall's actions.

42.     Following a suggestion by Plaintiff O'Neal, management also stated that although Defendant Marshall would, for the time being, continue working alongside the female keepers, they would consider directing Defendant Marshall that he would not be allowed to use his phone. However, during this meeting, they did not affirmatively state that they would be implementing this rule.

43.     However, management also directed the keepers that they were expected to remain professional at work and towards Defendant Marshall.

44.     Despite these assurances, Defendant Marshall continued using his phone during work hours, and upon information and belief of Plaintiffs, received no additional discipline or further reprimand despite continuing to use his cell phone.

45.     As a result, Plaintiffs and the other female keepers felt extremely vulnerable and unsafe at work, as well as constant humiliation, shame and anxiety.

46.     On or about July 9, 2016, Plaintiff Wilber learned that no further disciplinary action had been taken against Defendant Marshall and that the investigation into his conduct had been closed.

47.     Furthermore, on or about July 9, 2016, management told Plaintiff Wilber that no accommodations would be made for her or the other keepers and they would have to continue working with Defendant Marshall and be respectful and courteous towards him.

48.     In response to management's failure to address Defendant Marshall's behavior, on or about July 12, 2016, Plaintiff O'Neal filed a report and complaint with the New York Police Department (hereinafter "NYPD") 78th Precinct.

49.     Defendant Marshall was thereafter arrested at the workplace.

50.     As part of its investigation, the NYPD spoke to Plaintiff Wilber about the incident.

51.     Of note, on or about July 14, 2016, Plaintiff Wilber learned from Officer Robert Marshall that Defendant Marshall, while in police custody, admitted that he engaged in the unwanted surveillance.

52.     Nevertheless, Defendant Marshall continues to work alongside Plaintiffs and the other female wild animal keepers.

53.     Additionally, on July 22, 2016, Plaintiff Wilber met with Defendant McClean and Mr. McCaskill, who once again told Ms. Wilber that she had to be respectful towards Mr. Marshall and that if she did not treat him cordially and work with him, she would be creating a hostile work environment.

54.     Plaintiffs, as a result of management's failure to adequately address Defendant Marshall's behavior and management's blatant disregard for Plaintiffs' wellbeing or dignity as women, have suffered anxiety, depression, lowered self-esteem, self-worth, and self-confidence, and other forms of emotional distress.

55.     Plaintiffs' work performance has also been affected.

56.     Specifically, Plaintiff Wilber, whenever she is assigned to feed the sea lions with Defendant Marshall, requests a replacement.

57.     She also refrained from eating lunch in the breakroom table for months following the incident.

58.     On or about August 2, 2016, Plaintiff Wilber requested a transfer to the New York aquarium, but was informed by Defendant Piper that he did not support transfers outside the normal application process and that he hoped that Plaintiff Wilber and Mr. Marshall "would be able to work through a difficult time."

## Retaliation Against Plaintiff Wilber

59.     Additionally, management has retaliated against Plaintiff Wilber for raising her concerns regarding Defendant Marshall and for informing the other female keepers.

60.     On or about July 26, 2016, Plaintiff Wilber met with Defendant Rivera and Samantha Santiago, union representative.

61.     During this meeting, Plaintiff Wilber was questioned about how the other keepers found out about Defendant Marshall's act of recording the keepers.

62.     During this meeting, Plaintiff Wilber told management that she had shown the videos to the keepers because she felt it was their right to know, and that she would have called the police herself on Defendant Marshall had she not been previously assured that Defendant Marshall would be terminated.

63.     Shortly after the July 26, 2016 meeting, on the same day, management issued Plaintiff Wilber a disciplinary letter for allegedly leaving a secondary holding door to an animal exhibit unlocked on July 16, 2016.

64.     Plaintiff Wilber, on July 16, 2016, did not leave the holding door unlocked, and a security guard, Charlotte Rivera, confirmed this.

65.     However, on July 16, 2016, another security guard was able to open the holding door by pulling it on aggressively and with excessive force, indicating that there were mechanical problems with the door.

66.     Additionally, prior to July 16, 2016, this same holding door had been found unlocked on other occasions, but no disciplinary letters were issued to staff members as a result.

67.     Upon information and belief of Plaintiff Wilber, management issued this disciplinary letter to Plaintiff Wilber in retaliation for her complaints and with knowledge that there were mechanical issues with this door.

68.     The aforementioned July 26 letter was the first disciplinary letter that Plaintiff Wilber had ever received.

69.     After receiving the letter, Plaintiff Wilber requested a meeting with management prior to filing a grievance with her union.

70.     Two weeks later, on or about August 9, 2016, Plaintiff Wilber met with management to discuss the aforementioned disciplinary letter.

71.     Incredulously, not only did management refuse to remove the aforementioned letter, but management also issued Plaintiff Wilber a second letter, on August 9, 2016, for purportedly improperly feeding an animal before it was to be anesthetized for surgery.

72.     However, this disciplinary letter fails to mention that it was Plaintiff Wilber herself who informed management of her mistake.

73.     Furthermore, when the aforementioned animal's surgery was rescheduled for September 20, 2016, the incorrect animal was anesthetized and operated on, yet none of the individuals culpable for this negligence received disciplinary letters for their conduct, indicating that Plaintiff Wilber was treated—once again—by management in a retaliatory and disparate fashion.

74.     Management has also changed Plaintiff Wilber's work schedule so that she had to work on weekends.

## Retaliation Against Plaintiff O'Neal

75.    On September 29, 2016, Plaintiffs—through their legal counsel—submitted a letter to Defendant WCS notifying them of Plaintiff's claims and requesting that management take appropriate action to rectify the situation and address Plaintiffs' concerns.

76.    In apparent retaliation for the September 29, 2016 letter, Plaintiff O'Neal, in late October 2016, was placed on the sea lion training team with Defendant Marshall assigned to her has her supervisor and mentor, making it impossible for Plaintiff O'Neal to avoid him at work and forcing her to work with him in close proximity.

77.    On November 1, 2016, Plaintiff O'Neal—through her legal counsel—submitted a letter to Defendant WCS notifying them of her discomfort in working with Defendant Marshall, but no action was taken.

## Administrative Proceedings

78.    On or about December 8, 2016, Plaintiffs each filed Complaints with the New York State Division of Human Rights (hereinafter "DHR") against Defendant WCS, Defendant Marshall and Defendant Rivera.

79.    On June 13, 2017, the DHR dismissed Plaintiffs' complaints on the grounds of administrative convenience.

80.    Plaintiffs received Notice of Right to Sue letters from the Equal Employment Opportunity Commission dated June 23, 2017. Copies of Plaintiffs' Notice of Right to Sue letters are annexed hereto, collectively, as Exhibit A.

81.    Plaintiffs continue to work at Defendant WCS to date.

82.    Plaintiffs continue to feel unsafe at work on a daily basis due to management's failure to discipline Mr. Marshall and failure to prevent him from using his phone on a daily basis.

83.    As recently as August 8, 2017, Plaintiff Wilber saw Mr. Marshall using his phone during

work hours, despite management's directive that he would not be allowed to use his phone.

84.    On August 9, 2017, Plaintiffs met with Ms. McClean to discuss Mr. Marshall's continued

use of his phone.

85.    In response to Plaintiffs' concerns that Mr. Marshall continued to use his phone at work

and thus continued to pose a threat to the female keepers' safety, privacy and dignity, Ms.

McClean insisted that she had documented the event.

86.    However, Ms. McClean rejected Plaintiff Wilber's offer to write an incident report, and

Plaintiffs at no point saw any documentation of the event.

87.    On August 10, 2017, in response to Plaintiff Wilber refusing to work with Mr. Marshall

on a training program, management approached Plaintiff Wilber and informed her that she was

expected to work with all staff-members, including Mr. Marshall.


## FIRST CLAIM FOR RELIEF
### (Against Defendant WCS for Violation of Title VII – Hostile Work Environment)

88.    Plaintiffs repeat and reallege all the preceding paragraphs of this Complaint, as if fully set

forth herein.

89.    Defendant Marshall engaged in unwanted sexual harassment and sexual surveillance by

recording Plaintiffs and other female wild animal keepers underneath the picnic table.

90.    After Plaintiffs reported Mr. Marshall's heinous actions, Defendant WCS failed to take

appropriate action to address Mr. Marshall's actions.

91.    Specifically, Defendant WCS:

             a.  Failed to acknowledge that Defendant Marshall's actions were

                 offensive, humiliating, inappropriate, or sexual in nature;

12

b.  Failed to take measures to allow Ms. Wilber or Ms. O'Neal to work apart from Defendant Marshall;

c.  Failed to enforce their purported "no cellphone policy" in regard to Defendant Marshall;

d.  Failed to discipline Defendant Marshall in any manner;

e.  Failed to ensure Ms. Wilber, Ms. O'Neal and the other female wild animal keepers that they could report future acts of misconduct in the future without reprisal, as Defendant WCS has retaliated against both Plaintiffs.

92.  Defendant WCS's failure to adequately address Defendant Marshall's sexual harassment and unwanted sexual surveillance has created a severe and humiliating hostile work environment.

93.  Defendant Marshall's offensive, severe and humiliating actions—and Defendant WCS's failure to address Defendant Marshall's actions—have caused Plaintiffs to feel anxiety, depression, lowered self-esteem, self-worth, and self-confidence, and other forms of emotional distress.

94.  Defendant Marshall's offensive, severe and humiliating actions—and Defendant WCS's failure to address Defendant Marshall's actions—have affected Plaintiffs' work performance.

95.  Plaintiffs have suffered irreparable injury and damages for mental anguish and humiliation as a result of the conduct complained of herein.

## SECOND CLAIM FOR RELIEF
### (Against Defendant WCS for Violation of Title VII – Retaliation)

96.     Plaintiffs repeat and reallege all the preceding paragraphs of this Complaint, as if fully set forth herein.

97.     After reporting Defendant Marshall's actions, and after expressing their desire that Defendant WCS address Defendant Marshall's conduct, Defendant WCS retaliated against Plaintiffs.

98.     Defendant WCS has issued Plaintiff Wilber multiple disciplinary letters for conduct that she either did not engaged in or for conduct for which other employees did not receive disciplinary letters.

99.     Defendant WCS has also changed Plaintiff Wilber's schedule so that she had to work on weekends.

100.    Defendant WCS forced Plaintiff O'Neal to work alongside and in close proximity to Mr. Marshall as a sea lion trainer.

## THIRD CLAIM FOR RELIEF
### (Individual Claims against all Defendants for Violation of New York State Human Rights Law – Hostile Work Environment)

101.    Plaintiffs repeat and reallege all the preceding paragraphs of this Complaint, as if fully set forth herein.

102.    Defendant Marshall engaged in unwanted sexual harassment and sexual surveillance by recording Plaintiffs and other female wild animal keepers underneath the picnic table.

103.    After Plaintiffs reported Defendant Marshall's heinous actions, management failed to take appropriate action to address Defendant Marshall's actions.

104.    Management's failure to adequately address Defendant Marshall's sexual harassment and unwanted sexual surveillance has created a severe and humiliating hostile work environment.

105.    Defendant Marshall's offensive, severe and humiliating actions—and management's failure to address Defendant Marshall's actions—have caused Plaintiffs to feel anxiety, depression, lowered self-esteem, self-worth, and self-confidence, and other forms of emotional distress.

106.    Defendant Marshall's offensive, severe and humiliating actions—and management's failure to address Defendant Marshall's actions—have affected Plaintiffs' work performance.

107.    Plaintiffs have suffered irreparable injury and damages for mental anguish and humiliation as a result of the conduct complained of herein.


### FOURTH CLAIM FOR RELIEF
**(Individual Claims against Defendants Wildlife Conservation Society, McClean, Piper and Rivera for Violation of New York State Human Rights Law – Retaliation)**

108.    Plaintiffs repeat and reallege all the preceding paragraphs of this Complaint, as if fully set forth herein.

109.    After reporting Defendant Marshall's actions, and after expressing their desire that Defendant WCS and management address Defendant Marshall's conduct, management retaliated against Plaintiffs.

110.    Management has issued Plaintiff Wilber multiple disciplinary letters for conduct that she either did not engaged in or for conduct for which other employees did not receive disciplinary letters.

111.    Management has also changed Plaintiff Wilber's schedule so that she had to work on weekends.

112.     Management has forced Plaintiff O'Neal to work alongside and in close proximity to Defendant Marshall as a sea lion trainer.


**FIFTH CLAIM FOR RELIEF**
**(Individual Claims against all Defendants for Violation of New York City Human Rights Law – Hostile Work Environment)**

113.     Plaintiffs repeat and reallege all the preceding paragraphs of this Complaint, as if fully set forth herein.

114.     Defendant Marshall engaged in unwanted sexual harassment and sexual surveillance by recording Plaintiffs and other female wild animal keepers underneath the picnic table.

115.     After Plaintiffs reported Defendant Marshall's heinous actions, management failed to take appropriate action to address Defendant Marshall's actions.

116.     Management's failure to adequately address Defendant Marshall's sexual harassment and unwanted sexual surveillance has created a severe and humiliating hostile work environment.

117.     Defendant Marshall's offensive, severe and humiliating actions—and management's failure to address Defendant Marshall's actions—have caused Plaintiffs to feel anxiety, depression, lowered self-esteem, self-worth, and self-confidence, and other forms of emotional distress.

118.     Defendant Marshall's offensive, severe and humiliating actions—and management's failure to address Defendant Marshall's actions—have affected Plaintiffs' work performance.

119.     Plaintiffs have suffered irreparable injury and damages for mental anguish and humiliation as a result of the conduct complained of herein.

## SIXTH CLAIM FOR RELIEF
**(Individual Claims against Defendants Wildlife Conservation Society, McClean, Piper and Rivera for Violation of New York State Human Rights Law – Retaliation)**

120.    Plaintiffs repeat and reallege all the preceding paragraphs of this Complaint, as if fully set forth herein.

121.    After reporting Defendant Marshall's actions, and after expressing their desire that Defendant WCS and management address Defendant Marshall's conduct, management retaliated against Plaintiffs.

122.    Management has issued Plaintiff Wilber multiple disciplinary letters for conduct that she either did not engaged in or for conduct for which other employees did not receive disciplinary letters.

123.    Management has also changed Plaintiff Wilber's schedule so that she had to work on weekends.

124.    Management has forced Plaintiff O'Neal to work alongside and in close proximity to Defendant Marshall as a sea lion trainer.


## JURY DEMAND

Plaintiffs demand a trial by a jury on all of the triable issues of this Complaint.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for declaratory relief and damages as follows:

A.    A declaratory judgment that Defendant WCS is in violation of Title VII;

B.    A declaratory judgment that Defendants WCS, Marshall, McClean, Rivera and Piper are in violation of the New York State Human Rights Law;

C.    A declaratory judgment that Defendants WCS, Marshall, McClean, Rivera and Piper are in violation of the New York City Human Rights Law;

D.    Enjoining Defendants WCS, Marshall, McClean, Rivera and Piper from engaging in any similar violation;

E.    Awarding Plaintiffs compensatory damages pursuant to Title VII, the New York State Human Rights Law, and the New York City Human Rights Law;

F.    Awarding Plaintiffs punitive damages;

G.    Awarding Plaintiffs costs and reasonable attorneys' fees; and

H.    Such other and further relief as to this Court may deem necessary, just and proper.


Dated:        New York, New York
              November 20, 2017

                          **GLASS KRAKOWER LLP**
                          Attorneys for Plaintiff
                          100 Church Street, 8th Floor, Suite 800
                          New York, NY 10007
                          (212) 537-6859

                          By: /s: *Jordan F. Harlow*
                              Jordan F. Harlow, Esq.